## 42484. THOMAS v. THE STATE.
(334 SE2d 675)

GREGORY, Justice.

Charles Thomas was tried and convicted in Wilkes County of the murder of Catherine Bush and sentenced to life imprisonment.[1]

---

[1] The defendant was convicted of murder and sentenced to life imprisonment on Febru-

At trial Thomas testified he and Larry O'Neal Rice[2] had been with the victim in Thomas' car on the night of the victim's death. Thomas, who is paralyzed from the waist down, was driving[3] while Rice and the victim rode in the back seat. Thomas testified that he stopped the car because Rice and the victim were struggling. Thomas observed that the victim's knit shirt was torn. Thomas stated that after he resumed driving, the victim, by this time naked, climbed into the front passenger seat with him. Rice then grabbed the victim by the throat and pulled her toward the back seat. According to Thomas the victim became limp and he could detect no heartbeat. Thomas testified that they were in Taliaferro County at this time. Thomas testified Rice wanted to leave the victim's body on a dirt road, but Thomas feared his tire tracks would be detected; the two resolved to take the victim back into Wilkes County and throw her body off the Little River Bridge. Rice then executed this plan.

The following morning Rice reported to Wilkes County police officers that he had thrown Bush's body off the Little River Bridge.

At Thomas' trial Rice testified on behalf of the State that Thomas had torn the victim's shirt and ordered her to disrobe and join him in the front seat of the car. According to Rice the victim struck Thomas with her shoe and a struggle ensued during which Thomas choked the victim with an undergarment. Rice testified that, under orders from Thomas, he threw the victim's body off the Little River Bridge. Thomas and Rice then proceeded to the Cool Inn in order to be seen and establish an alibi.

1. Thomas argues the State failed to establish venue was proper in Wilkes County. Rather, Thomas maintains the victim's death occurred in Taliaferro County, based on testimony that she was strangled there.

OCGA § 17-2-2 (c) provides in part, "Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred. . . ."

The victim's body was found on an embankment approximately 28 feet below the Little River Bridge in Wilkes County. Larry Rice testified he threw the victim's body from this bridge. The medical examiner who performed the autopsy on the victim testified that, while

---

ary 6, 1985. A motion for new trial was filed on February 20, 1985, and amended on May 20, 1985. The trial court denied the motion for new trial on May 28, 1985. The case was docketed in this court on July 3, 1985. Oral argument was heard on September 16, 1985.

[2] Prior to the trial in this case, Rice was convicted of Bush's murder and sentenced to life imprisonment.

[3] Thomas' car is equipped with special hand controls which enable him to drive it.

there was evidence of strangulation, this was not the cause of the victim's death. Rather, the medical examiner testified the victim died from a ruptured liver, caused by her fall from the bridge in Wilkes County. Therefore, venue was proper in Wilkes County. OCGA § 17-2-2 (a), (c).

2. Thomas argues the trial court erred in charging the jury the law of conspiracy. Thomas maintains that the jury may have thought it was authorized to convict him of conspiracy to commit the crime of murder, OCGA § 16-4-8, when, in fact, he was not indicted for this offense. Thomas additionally argues the charge was erroneous in that the offense of conspiracy to commit murder merged with the completed crime of murder.

The trial court charged the jury the theory of the State's case was that Thomas and Rice conspired to murder the victim. He then charged that a conspiracy requires an agreement. The agreement may be proved either by evidence that it was expressly made or by implication from evidence of the conduct of the conspirators. He then concluded, "If a conspiracy is established beyond a reasonable doubt, each of those who were parties to it becomes a party to all acts naturally and necessarily done pursuant thereto or in furtherance of the conspiracy, and is equally responsible for said act or acts." At no time did the trial court authorize the jury to convict Thomas of the substantive crime of conspiracy to commit murder. The indictment did not allege the crime of conspiracy to commit murder, the jury was not charged on this crime, and the jury clearly returned a verdict of "guilty" of the offense of murder.

We further find the evidence in this case supported the charge. There are four distinct legal concepts with which we are concerned. The first involves conspiracy in an evidentiary sense. All those who conspire to commit a crime are guilty of that crime. "Where individuals enter into a conspiracy to commit a crime, its actual perpetration by one or more of them in pursuance of such conspiracy is in contemplation of law the act of all, and therefore is imputable to all. . . ." *Chambers v. State*, 194 Ga. 773, 781 (22 SE2d 487) (1942). This is the essence of the trial court's charge in the case before us. The second concept concerns parties to a crime as defined in OCGA § 16-2-20.[4]

---

[4] OCGA § 16-2-20. "When a person is a party to a crime.

(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.

(b) A person is concerned in the commission of a crime only if he:

(1) Directly commits the crime;

(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;

(3) Intentionally aids or abets in the commission of the crime; or

Parties to a crime, like conspirators, may be convicted of the commission of the crime. The third is the offense of conspiracy to commit a crime. OCGA § 16-4-8. This is a separate statutory offense to be distinguished from the underlying crime which is the subject of the conspiracy. Last is the underlying statutory offense itself. In this case the statutory offense is murder.

Conspiracy in an evidentiary sense is a concept of the common law which has remained with us insofar as it concerns the participation of individuals in a crime, and it is not error for the trial court to charge this doctrine where the evidence tends, to show a conspiracy. *Ross v. State*, 255 Ga. 1 (334 SE2d 300) (1985); *Battle v. State*, 231 Ga. 501 (202 SE2d 449) (1973); *Anderson v. State*, 153 Ga. App. 401, 403 (265 SE2d 299) (1980). In the 1968 Code, parties to a crime was established as a concept. OCGA § 16-2-20; Ga. Laws 1968, p. 1249, § 1, § 26-801. However, this did not eliminate the concept of conspiracy in an evidentiary sense. Likewise, conspiracy to commit a crime as an offense separate from that of the underlying crime was enacted by statute in 1968. OCGA § 16-4-8; Ga. Laws 1968, p. 1249, § 1, § 26-3201. Neither did this eliminate the evidentiary concept of conspiracy previously discussed. See *Battle v. State* and *Ross v. State*, supra.

We therefore find no error in the trial court's charge.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 1985 —
RECONSIDERATION DENIED OCTOBER 17, 1985.

*Orr & Kopecky, Wilbur A. Orr*, for appellant.

*Dennis C. Sanders, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General*, for appellee.

---

(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime."