## 75782. CHEWS v. THE STATE.
### (371 SE2d 124)

McMURRAY, Presiding Judge.

In the summer of 1986 Gregory Lewis was approached in a Ft. Lauderdale, Florida pool hall by a young woman known to him as "Cathy." She told Lewis that he could make some money if he called a certain telephone number and asked for "Dred." Lewis dialed the number and spoke with an individual who identified himself as "Dred." Dred told Lewis to rent an automobile and leave it overnight in a K-Mart parking lot in Ft. Lauderdale. Lewis was not able to rent an automobile himself (he did not have a credit card), so a friend, Lisa Walker, rented one for him.

Lewis took the automobile to the K-Mart parking lot and left it (with the keys) pursuant to Dred's instructions. The following morning, July 27, 1986, Lewis retrieved the automobile and found a map inside of it. The route to Macon, Georgia was highlighted on the map. Lewis picked up two friends, Louvenia Johnson and Errol Hines, and left for Macon. That afternoon, he was stopped for speeding in Crisp County.

The suspicions of the officer who stopped Lewis for speeding were aroused when he learned that the person who rented the automobile was not traveling with Lewis and that the rental agreement contained a provision that the automobile was not to be driven outside of Florida. The officer asked Lewis if he could search the automobile and Lewis gave his consent. During the search, a quantity of cocaine was discovered in a brown bag under the rear seat. Lewis and his friends were arrested and taken to the Crisp County jail.

Georgia Bureau of Investigation ("GBI") agent John Whitaker spoke with Lewis in the jail. He explained that Lewis could help himself and his friends if he was willing to cooperate with the GBI. Lewis was willing.

A team of GBI agents was assembled for a "drug bust." The plan called for Lewis to make his delivery in Cordele, instead of Macon. To achieve that end, Lewis telephoned Dred and told him that his automobile had broken down in Cordele. Meanwhile, adjoining rooms were taken by the GBI at the Cordele Ramada Inn. At about 10:45 p.m., Lewis again phoned Dred. In that conversation, Lewis told Dred that he was in Room 208 at the Ramada Inn. Dred replied that he would send a man to make the pickup in Cordele. He also told Lewis that the man would use the name "Dred" when he came to the door.

At about 12:20 a.m. on July 28, 1986, two automobiles pulled into the parking area of the Cordele Ramada Inn. The lead automobile was a Buick; it was driven by Bobby Turner. The second was a Lincoln; it was driven by defendant Chews. There were two passengers in the Lincoln: Robert Paul Robertson and Deborah Tracie Cowins.

The Buick parked near Room 208. Simultaneously, the Lincoln approached the registration area. Robertson got out of the Lincoln, went to the night registration window and asked the motel clerk where Room 208 was located. When Robertson returned, the Lincoln left the Ramada Inn and proceeded down the highway.

A GBI agent ascertained the nature of Robertson's inquiry and concluded that the occupants of the Lincoln were "involved." He followed the Lincoln to the Colonial Inn. There, defendant Chews, Robertson and Cowins were arrested. At the time of the arrest Robertson produced identification showing his name to be "Henry Booker."

Each occupant of the Lincoln was asked what they were doing in Cordele. Defendant replied that they were going to buy shoes in Miami, Florida and Nashville, Tennessee; Robertson responded that they were on their way to a shoe show in Lakeland, Florida; Cowins said they were visiting defendant's aunt in Cordele.

A search of the Lincoln revealed $11,720 in cash and a loaded pistol. The cash was in the following denominations: 16 one hundred dollar bills, 27 fifty dollar bills, 412 twenty dollar bills, 51 ten dollar bills and 4 five dollar bills. Defendant stated that the money was his; he said he borrowed the pistol from a friend.

In the meantime, Turner exited the Buick and went to Room 208. Using the name "Dred," Turner entered the room. He gave Lewis $200 and took a package which Lewis pointed out to him. At that point, the GBI agents entered the room and arrested Turner. Searching Turner, the agents found a one dollar bill and some change.

Defendant, along with Bobby Lewis Turner, Robert Paul Robertson and Deborah Tracie Cowins, was indicted for trafficking in co-

caine and for conspiring to traffic in cocaine. Bobby Lewis Turner and Robert Paul Robertson entered pleas of guilty to the lesser offense of Possession of Cocaine with intent to distribute. At defendant Chews' separate trial, evidence was introduced to show that on July 27, 1986, a "Henry Booker" checked into a Howard Johnson motel in Macon; that on the same day, Deborah Cowins was also registered there; and that the motel registration cards showed "Booker" to be driving a 1985 Lincoln and Cowins to be driving a 1986 Buick. The evidence also demonstrated that long distance telephone calls were made from the room registered to "Booker"; and that one of the calls was made to the same number at which Lewis reached Dred. Finally, the evidence showed that sales of cocaine are usually made in increments of $20.

Defendant took the witness stand on his own behalf. He testified that he owned a shoe business in Huntsville, Alabama and that at the time of his arrest he was on a trip to buy shoes in Florida and Tennessee; that he had been selling shoes to persons between the ages of 10 and 19 and that he was making the trip in order to put in a whole new line of shoes; that he took cash on the trip because he had written bad checks in the past and wholesalers would only deal with him on a cash basis; that in addition to buying shoes, he was going to use the money to cover the bad checks he had written; that he borrowed the gun for the trip because he was carrying such a large amount of cash; that Robertson worked for him occasionally and that Cowins worked for him on a part-time basis; and that Robertson went on the trip to help load shoes while Cowins went along to help select ladies' shoes.

Defendant also testified that Turner was Cowins' boyfriend; that on July 27, 1986, Turner and Cowins were fighting because he (defendant) was trying to "make it" with Cowins; that Turner left the Howard Johnson motel in Cowins' automobile and that he was following Turner to get Cowins' automobile back for her; that he followed Turner all the way to the Ramada Inn in Cordele; that he gave up the chase at that point because Cowins said to "forget about him"; and that he was planning to "make it" with Cowins at the Colonial Inn when he was arrested by the GBI.

Finally, defendant testified that he was drunk when he took a room with Robertson at the Howard Johnson motel in Macon; that he did not know what name was used to register for the room; that he could not remember whether he spent the night in the Macon motel before he left to follow Turner; and that he did not know what Robertson said to the motel clerk at the Ramada Inn in Cordele.

Upon the conclusion of the trial, the jury returned guilty verdicts upon the trafficking and conspiracy charges. Determining that the convictions merged, the trial court sentenced defendant to serve 30

years (15 in confinement) for the offense of trafficking in cocaine. Defendant moved for a new trial. The new trial motion was overruled and defendant appealed. *Held*:

1. In his first enumeration of error, defendant contends the evidence was insufficient to support the verdicts. In this regard, defendant argues that the only evidence implicating him was circumstantial and that that evidence does not exclude every reasonable hypothesis except defendant's guilt.

" 'To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.' OCGA § 24-4-6. 'This does not mean that the (S)tate must exclude every possible hypothesis showing innocence, but any reasonable hypothesis showing innocence.' *Robinson v. State*, 168 Ga. App. 569, 571 (309 SE2d 845) (1983). Where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the jury. '(T)his court will not substitute its judgment as to what is a reasonable hypothesis for that of the jury or the trial court.' Id. Neither is the jury obliged to accept defendant's explanation of circumstantial facts. *Barfield v. State*, 160 Ga. App. 228 (3) (286 SE2d 516) (1981). 'After having heard the witnesses and having observed them testify, (the jury is) more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law.' *Bogan v. State*, 158 Ga. App. 1, 3 (279 SE2d 229) (1981)." *Henderson v. State*, 184 Ga. App. 834, 835, 836 (363 SE2d 52).

In our view, the circumstantial evidence of defendant's guilt was overwhelming. Compare *Rutland v. State*, 129 Ga. App. 313 (199 SE2d 595). It was more than sufficient to enable the jury to find defendant guilty of the crimes charged beyond a reasonable doubt. *Heath v. State*, 186 Ga. App. 655 (368 SE2d 346). See *Henderson v. State*, 184 Ga. App. 834, 836, supra; *Phillips v. State*, 185 Ga. App. 54 (363 SE2d 283). The jury was not required to accept defendant's version of the facts. *Phillips v. State*, 185 Ga. App. 54, supra.

2. Relying upon OCGA § 24-3-5, defendant contends the trial court erred in admitting the statements of Robertson and Cowins into evidence. In this regard, defendant points out that the statements (as to what defendant, Robertson and Cowins were doing in Cordele) were made after the three conspirators were taken into custody. Thus, defendant argues, the statements were inadmissible against him because they were not made "during the pendency of the criminal project." OCGA § 24-3-5. We disagree. The rule is that a conspiracy does not necessarily end simply because one or more of the conspirators have been arrested. *Mooney v. State*, 243 Ga. 373, 392 (254 SE2d

337). " '[S]o long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other.' [Cit.]" *Evans v. State*, 222 Ga. 392, 402 (150 SE2d 240). At the time the statements were made by Robertson and Cowins the conspirators were trying to conceal the fact that a crime was committed and that they were involved in the crime. In fact, the statements themselves were an attempt by Robertson and Cowins to cover up the fact that they were conspiring to traffic in cocaine.

3. In his third enumeration of error, defendant contends the trial court erred in restricting his cross-examination of witnesses during a motion to suppress hearing. Even if defendant's right of cross-examination was unduly restricted during the hearing, defendant cannot demonstrate harm since he does not contend that the overruling of his motion to suppress was error. See *Owens v. Svc. Fire Ins. Co.*, 90 Ga. App. 553 (3) (83 SE2d 249). The third enumeration of error is without merit.

4. The assistant district attorney, in his closing argument, stated the following: "[Defendant] said he sold shoes to certain age groups, he sold them from 10 to 19. I thought shoes came in sizes. I didn't think shoes came in age groups. Now, different age group folks may like different styles but I submit to you that those same young folks that he was using to do the running around is some of the same young folks he was using to sell the cocaine to, some of those from 10 to 19." This statement prompted defense counsel to object and move for a mistrial. The motion was overruled without curative instructions.

Defendant asserts the trial court erred in permitting the assistant district attorney to make the foregoing argument. We disagree. A prosecutor is permitted to argue inferences from the evidence, even if such inferences are remote, illogical or unreasonable. *Hunt v. State*, 180 Ga. App. 103, 106 (3) (348 SE2d 467); *Callahan v. State*, 179 Ga. App. 556, 563 (347 SE2d 269). Given the facts of this case, we find the inference drawn by the assistant district attorney to be a permissible one. *Lee v. State*, 181 Ga. App. 570, 571 (2) (353 SE2d 67). The trial court did not abuse its discretion in denying the motion for mistrial. *O'Neal v. State*, 170 Ga. App. 637, 638 (2) (318 SE2d 66).

5. The trial court did not err in refusing to permit defense counsel to state, during closing argument, that no telephone calls had been placed from defendant's house or business in Huntsville, Alabama, to the telephone number at which Dred had been reached. No such fact was introduced at the trial and no such inference can be drawn from the record. See generally *Patterson v. State*, 124 Ga. 408, 409 (52 SE 534).

6. The trial court charged the jury: "[T]he law recognizes two

kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law also recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, then the possession is sole. If two or more persons share actual or constructive possession of a thing, then the possession is joint. The jury would be authorized to convict only if they should find beyond a reasonable doubt that the defendant knowingly had actual or constructive possession either alone or jointly with others."

In his seventh enumeration of error, defendant contends the trial court's charge was erroneous since OCGA § 16-13-31 (a) only speaks in terms of "actual" possession of cocaine. In its decision in *Lockwood v. State*, 257 Ga. 796, 797 (364 SE2d 574), the Supreme Court held that the trial court erred in charging that a trafficking in cocaine conviction was authorized if the jury found beyond a reasonable doubt that defendant had actual *or* constructive possession of cocaine. The charge in *Lockwood v. State*, 257 Ga. 796, supra, was nearly identical to the trial court's charge in the case sub judice. Accordingly, *Lockwood v. State*, 257 Ga. 796, supra, mandates our holding that in the case sub judice the trial court erred in its charge to the jury and the conviction must be reversed. *Lockwood v. State*, 257 Ga. 796, supra. In deference to the learned trial judge, we note that the trial in the case sub judice took place prior to the date of the Supreme Court's decision in *Lockwood v. State*, 257 Ga. 796, supra.

7. The trial court charged the jury that witnesses are presumed to speak the truth unless they are impeached as provided by law. Such a charge is not erroneous; it can be misleading, however, and our Supreme Court has recommended that it no longer be used. See *Noggle v. State*, 256 Ga. 383, 385 (4) (349 SE2d 175). Accordingly, this charge should not be employed upon a retrial.

8. In the remaining enumeration of error, defendant contends the trial court erred in denying his motion for a continuance. This alleged error is not likely to recur upon a retrial and it need not be considered.

*Judgment reversed. Benham, J., concurs and also concurs specially. Pope, J., concurs specially.*

Pope, Judge, concurring specially.

Although I agree that the charge as given requires reversal in this case, I am compelled nevertheless by what I perceive as continued confusion in this area to elaborate on why the erroneous charge neces-

sitated the reversal here, in hopes of avoiding this problem in future cases.

In *Lockwood v. State*, 257 Ga. 796 (364 SE2d 574) (1988) our Supreme Court reiterated the long established maxim that evidence of actual possession is necessary to uphold a conviction of trafficking in cocaine, and held that a charge to the effect that a conviction may be based on either actual *or* constructive possession constitutes reversible error. Such was the error also committed here. Note, however, that even if the trial court gives a charge on the *definition* of constructive possession, the conviction may be upheld so long as the court correctly charges that a conviction can be had only upon a showing of actual possession. *Raines v. State*, 186 Ga. App. 239 (4b) (366 SE2d 841) (1988). However, inasmuch as the charge on the definition of constructive possession is mere surplusage, the better practice would be to eliminate it entirely in cases involving actual possession offenses.

It does not follow, however, that only the perpetrator who has physical custody of illegal contraband can be convicted of the offense of trafficking. Rather, as with other crimes, a conviction may also be had based upon either OCGA § 16-2-20 (party to a crime) or a theory of conspiracy. See, e.g., *Thomas v. State*, 255 Ga. 38 (2) (334 SE2d 675) (1985); *Heath v. State*, 186 Ga. App. 655 (1) (368 SE2d 346) (1988); *Raines*, supra; *Ceaser v. State*, 184 Ga. App. 599 (362 SE2d 156) (1987); *Pryor v. State*, 179 Ga. App. 293 (1) (346 SE2d 104) (1986); *Ramsey v. State*, 175 Ga. Ap. 97 (7) (332 SE2d 390) (1985); *Evans v. State*, 167 Ga. App. 396 (1) (306 SE2d 691) (1983). Clearly, in the present case the evidence authorized a conviction under either of these theories. Indeed, the record shows that in addition to instructing the jury on the substantive offense of conspiracy, with which defendant was also charged, the trial court also charged the jury that defendant could be convicted as a party to a crime, and correctly charged the jury in the language contained in OCGA § 16-2-20 and § 16-2-21. However, because the trial court also erroneously charged the jury that defendant could be convicted based upon a finding of either actual *or* constructive possession, we have no way of determining which theory formed the basis of the jury's decision. Hence, I reluctantly agree that reversal is required.

I am authorized to state that Judge Benham joins in this special concurrence.

DECIDED JUNE 22, 1988.

*Richard E. Thomas, Harvey D. Harkness*, for appellant.

*John C. Pridgen, District Attorney*, for appellee.